IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

AMERICAN HONDA MOTOR CO., INC.,

    Plaintiff,

v.

THE COAST DISTRIBUTION SYSTEM, INC.,

    Defendant.

No. C 06-04752 JSW

**ORDER DENYING AMERICAN HONDA MOTOR CO., INC.'S MOTION TO DISMISS**

## INTRODUCTION

This matter comes before the Court upon consideration of the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) filed by Plaintiff American Honda Motor Co., Inc. ("Honda"). Having considered the parties' pleadings, relevant legal authority, and having had the benefit of oral argument, the Court HEREBY DENIES Honda's motion.

## FACTUAL AND PROCEDURAL BACKGROUND

Honda is the exclusive licensee of U.S. Patent Nos. 5,857,441 (the "'441 Patent"), 6,738,468 ("the '468 Patent"), 5,706,769 (the "'769 Patent"), 6,250,273 (the "'273 Patent"), and 6,439,215 (the "'215 Patent").

On April 28, 2006, Honda sent a letter to Defendant, The Coast Distribution System, Inc. ("Coast"), in which it advised Coast that, in addition to automobiles, "Honda runs businesses of a wide variety of other consumer products, including generators," and that these generators were protected by a series of patents. (Complaint, Ex. A.) In that letter, Honda specifically

referenced the '441, '468, '215, '769, and '273 Patents. (*Id.*) Honda also notified Coast that:

> It has come to our attention that your company operates a website on which it assists in offering to sell customers within the United States generators, specifically KIPOR generator models 1000Ti/2000Ti/3000Ti. These KIPOR generators appear to be covered by *each* of the patents mentioned above. ...
>
> We request that you take immediate action to address this matter, either by removing the above-referenced KIPOR generators from your online catalog, physical catalog, physical stores and all other means by which you sell or offer for such generators within the United States, or by explaining to us why you believe the generators are not covered by the above patents.
>
> We expect your prompt reply in this matter. <u>In the meantime, if you have any questions or concern, please do not hesitate to contact us so that we can discuss this matter in more detail, if necessary in person.</u>
>
> Please understand that Honda respects the intellectual property rights of others and expects others to respect intellectual property rights.

(*Id.* (italics added, underscore in original).)

      Coast distributes, among other parts and accessories, electrical generators. (Declaration of Dennis Castagnola ("Castagnola Decl."), ¶ 2.) One of Coast's suppliers for electrical generators is Wuxi Kipor Power Co., Ltd. ("Kipor"). (*Id.*, ¶ 3.) Coast is Kipor's exclusive distributor for the United States market. However, Kipor also sells electrical generators to other distributors in foreign markets. (*Id.*)

      In March 2006, Coast learned from Kipor that Honda had sued one of Kipor's Italian distributors for patent infringement and unfair competition. (*Id.*, ¶ 4; *see also* Declaration of Peter E. Hueser in Support of Coast's Opposition ("Heuser Decl."), ¶ 2, Ex. A.) In that lawsuit, Honda asserted European patents that correspond to the '468 and '769 Patents, and in which Honda identified as infringing products Kipor models 1000Ti, 2000Ti, and 3000Ti. (Castagnola Decl., ¶ 4; Heuser Decl., ¶ 2.)

      On May 19, 2006, Coast responded to Honda's April 28 letter and advised that it was reviewing Honda's assertions and would respond "in due course." (Declaration of Eric Cha in Support of Honda's Motion to Dismiss ("Cha Decl."), Ex. D.) On June 2, 2006, Coast sent another letter to Honda, in which it advised that Coast "does not offer Kipor's 3000Ti generator. Although Coast has offered a KGE3000Ti generator, that

generator actually corresponds to Kipor's 3500Ti generator (which has a power rating of 3000kW)." (Cha Decl., Ex. E.) Coast asked that Honda "verify that [its] concerns relate to the Kipor 3000Ti generator (not the Kipor 3500Ti generator offered by Coast under model no. KGE3000Ti)." (*Id.*)

In response to Coast's June 2 letter, Honda sent another letter dated June 23, 2006, in which it stated:

> The Kipor generators which were the subject of our earlier correspondence and which we wish to bring to your attention are *any Kipor generators covered by Honda's five US patents* and are particularly those having kV values of 1000, 2000, and 2600, which we understand to correspond to the Kipor model designations KGE1000, KGE2000, and KGE2600 (now, but formerly, KGE3000).
>
> As to KGE3000 (now, but formerly KGE3500), we are currently investigating its detailed structure to determine whether it is covered by Honda's five U.S. patents.
>
> *In any event, in view of Kipor's changes to its product designations, we do not wish to be restricted to particular models and specifically reserve the right to address other Kipor models sold by Coast Distribution in the future.*
>
> In the meantime, please give us comments on KGE1000, KGE2000, and KGE2600 (now, but formerly KGE3000), as soon as possible.

(Cha Decl., Ex. F (emphasis added).)

On July 6, 2006, Coast responded to Honda and advised that "there still appears to be some confusion regarding the model designators specified in your letters. To our understanding, Kipor has not changed its product designations. Furthermore, we are unaware of any Kipor generator with a model number KGE2600." (Cha Decl., Ex. G.) Coast provided Honda with a list of the model numbers used by Coast and Kipor. Coast did, however, note that it offered products corresponding to Kipor's KGE1000Ti, KGE2000Ti, and KGE3500Ti generators, the latter of which was sold by Coast under product no. KGE3000Ti. (*Id.*) Coast also advised Honda that it intended to discontinue sales of the Kipor KGE1000Ti and KGE2000Ti generators. Coast explained that "[t]his decision is made to resolve this issue, without conceding any infringement of the identified Honda patents, or conceding the validity of such patents." (*Id.*) Coast also advised Honda

3

1  that, with respect to the ongoing investigation of Kipor's KGE3500Ti generator (Coast
2  KGE3000Ti generator), Coast believed it to be "clearly outside the scope of the Honda
3  patents. Coast thus plans to continue to sell this generator." (*Id.*) Coast concluded its'
4  letter by asking Honda to contact it if it had any questions, but that "[o]therwise, we will
5  consider this matter resolved." (*Id.*)
6      On August 7, 2006, Honda filed the instant lawsuit against Coast for infringement
7  of the '441 and '468 Patents. (Complaint, ¶¶ 8-17.) Coast sought, and obtained, an
8  extension of time in which to respond to the Complaint until October 3, 2006.
9      On September 19, 2006, Honda filed a complaint with the International Trade
10 Commission ("ITC"), in which it sought an injunction to prevent *Kipor* from importing
11 Kipor generators bearing model nos. 1000Ti, 2000Ti, and 3000Ti, and asserted that those
12 models infringed the '769 and '273 Patents. (Cha Decl, Ex. H.) Coast is referenced in the
13 ITC Complaint as Kipor's sole U.S. distributor. (*Id.* at pp. 4, 14.)[1]
14     On October 3, 2006, Coast filed its Answer and asserted counterclaims against
15 Honda by which it seeks a declaratory judgment of non-infringement and invalidity on the
16 '441, '468, '769, '273 and '215 Patents pursuant to 28 U.S.C. §§ 2201, 2202. Honda
17 moves to dismiss Coast's counterclaims on the '769 and '273 Patents, on the ground that
18 the Court lacks subject matter jurisdiction to hear these claims.[2]

United States District Court

---

[1] Because the question presented to the Court is whether an actual controversy existed at the time Coast filed its counterclaims, Honda's actions before the ITC are pertinent to the resolution of that question.

[2] Honda initially moved to dismiss Count V of Coast's counterclaim, which pertains to the '215 Patent, but withdrew its motion and amended its reply to Coast's counterclaim to include an affirmative claim for infringement of the '215 Patent. (*See* Docket Nos. 25, 26.)

4

**ANALYSIS**

**A.  Legal Standards Applicable to Declaratory Relief Jurisdiction.**

As the party seeking declaratory relief from the Court, Coast must demonstrate that an actual controversy exists between it and Honda. *See* 28 U.S.C. § 2201; *Intellectual Property Devel., Inc. v. TCI Cablevision of California, Inc.*, 248 F.3d 1333, 1340 (Fed. Cir. 2001). The Federal Circuit has established a two part test to resolve that issue in patent suits. *See, e.g., Fina Research S.A. v. Baroid Ltd.*, 141 F.3d 1479, 1481 (Fed. Cir. 1998).[3]

First, the patentee must make an explicit threat or take other action that creates a reasonable apprehension on the part of the party seeking declaratory relief that it will face an infringement suit. *See Gen-Probe v. Vysis, Inc.*, 359 F.3d 1376, 1380 (Fed. Cir. 2004) (quoting *BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978 (Fed. Cir. 1993)). A court is required to evaluate the first prong of this test from an objective, rather than subjective, perspective. *See Shell Oil Co. v. Amoco, Corp.*, 970 F.2d 885, 887-88 (Fed. Cir. 1992). Thus, a putative infringer reasonably may apprehend that suit is imminent without an express charge of infringement, if the patentee engages in "subtler conduct," so long as "that conduct rises 'to a level sufficient to indicate an intent [on the part of the patentee] to enforce its patent,' *i.e.* to initiate an infringement action." *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 811 (Fed. Cir. 1996) (quoting *Shell Oil Co. v. Amoco, Corp.*, 970 F.2d 885, 887 (Fed. Cir. 1992)); *see also Arrowhead Indus. Water, Inc. v. Ecclochem*, 846 F.2d 731, 733 (Fed. Cir. 1988).

Second, there must be "present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity." *EMC Corp.*, 89 F.3d at 811. There is no dispute in this case that Coast would meet the second prong of this test. The only issue is whether Coast had a reasonable apprehension that it would face an infringement suit on the '769 and '273 Patents.

---

[3]  Because this is a patent case, the law of the Federal Circuit applies. *See MedImmune, Inc. v. Centocor, Inc.*, 409 F.3d 1376, 1378 (Fed. Cir. 2005).

1  **B.   Coast Has Established That It Had A Reasonable Apprehension of Suit As to the '769 and '273 Patents.**

3     Honda argues that its April 28 letter to Coast did not constitute an express charge of infringement and that none of its subsequent actions would give rise to a reasonable apprehension of suit. The Court disagrees. Considering the totality of circumstances, Honda's conduct is such that Coast could reasonably apprehend a lawsuit on the five patents referenced in the April 28 letter. Honda initiated the contact with Coast and was the first to suggest Coast might be engaging in conduct that infringed Honda's patents. *See EMC Corp.*, 89 F.3d at 812 (noting that fact that patentee approaches putative infringer is fact that may support finding of reasonable apprehension of suit).

    In its April 28 letter, Honda referenced *all* five of its patents. Citing each of those patents, Honda demanded that Coast take "immediate action" to address Honda's concerns, including "removing the above-referenced KIPOR generators from your online catalog, physical stores, and all other means by which you sell or offer for such generators within the United States." (Cha Decl., Ex. C.) The letter concluded with the statement that "Please understand that Honda respects the intellectual property rights of others and expects others to respect intellectual property rights." (*Id.*) While this letter may not state explicitly that Honda would sue Coast, a veiled threat is present. *See Arrowhead*, 846 F.2d at 737 (noting that although patentee's cease and desist letter "skillfully skirted an express charge of infringement," totality of the circumstances evidenced an intent to enforce patent rights); *see also GAF Building Materials Corp. v. Elk Corp. Of Dallas*, 90 F.3d 479, 481-83 (Fed. Cir. 1996) (finding cease and desist letter in which patentee stated the infringer's activities would constitute infringement of a yet to be issued patent and in which patentee demanded that the infringer cease all infringing activities would meet first prong of Federal Circuit test, but for the fact that patent had not yet issued).

    It is true that the parties continued to correspond about Honda's concerns. However, none of Honda's later correspondence to Coast suggests that Honda had satisfied its concerns with respect to the '769 and '273 patents. (Cha Decl., Exs. D-F.)

6

Further, in its June 2 letter to Coast, Honda expressly stated that the Kipor generators with which it was concerned were " any Kipor generators covered by Honda's five US patents." (Cha Decl., Ex. E.)  Honda also stated that "in view of Kipor's changes to its product designations, we do not wish to be restricted to particular models and specifically reserve the right to address other Kipor models sold by Coast Distribution in the future." (*Id.*) Looking at this correspondence from an objective perspective, Coast reasonably could conclude that Honda had not eliminated the '769 and '273 Patents as potential subjects of an infringement suit.  Although the Court must focus on the facts in existence at the time Coast filed the declaratory relief claims, the Court notes that Honda did subsequently amend its response to the counterclaim to assert the '215 Patent, in conformance with this previous reservation of rights.  Nor is Honda's argument that it has not asserted the '769 and '273 Patents against Coast persuasive, because "a patentee's present intentions do not control whether a case or controversy exists." *Vanguard Research, Inc. v. PEAT, Inc.*, 304 F.3d 1249, 1254-55 (Fed. Cir. 2002) (reversing district court's dismissal for lack of jurisdiction although patentee had stated its intention not to sue on patent raised in declaratory relief action).  This fact may bear on whether the Court should exercise its discretion to accept jurisdiction, however Honda's current intentions do not defeat whether jurisdiction existed in the first instance.

     Coast also provides evidence that it was aware of Honda's actions abroad against Kipor's customers on corresponding European patents before it received Honda's April 28 letter.  Moreover, *before* Coast was required to answer the instant complaint, it learned that Honda filed the ITC action against Kipor, in which Honda asserted the '769 and '273 Patents and noted that Kipor's only supplier within the United States is Coast.  In addition, the accused products in the ITC action correspond to the accused products in the instant action and to the products identified in the letters to Coast.  Thus, these other lawsuits also evidence Honda's willingness to protect technology covered by these patents. *See, e.g., Plumtree Softward, Inc. v. Datamize, LLC*, __ F.3d __, 2006 WL 3703180 at *5 (Fed. Cir. 2006) (lawsuit against other entities in another judicial district on patents at issue evidence

United States District Court
For the Northern District of California

7

1 that patentee engaged "'in a course of conduct that show[ed] a willing ness to protect [its]
2 technology) (brackets in original); *Arrowhead*, 846 F.2d at 737 (infringement lawsuit
3 against third party can be used to show evidence of intent and willingness to enforce patent
4 rights).

5     Finally, rather than accept Coast's invitation to contact it, if Honda had further
6 questions about Coast's products, Honda remained silent for a month and then filed the
7 instant lawsuit. Accordingly, considering the totality of the circumstances, the Court
8 concludes that Coast has met its burden to show that the Court has jurisdiction over
9 counterclaims related to the '769 and '273 Patents. The Court has also considered
10 Honda's arguments as to why it should, in the exercise of its discretion, decline to accept
11 jurisdiction, but finds no basis for doing so.

12     Accordingly, for the reasons set forth herein, Honda's motion to dismiss is
13 DENIED. The case management conference set for January 26, 2007, remains on calendar
14 and the parties' joint case management statement is due on January 19, 2007.

15     **IT IS SO ORDERED.**

17 Dated: January 5, 2007

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

8